UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MIKE WEBB,

       *Plaintiff*,

  v.

OFFICE OF MANAGEMENT AND
BUDGET, *et al.*,

       *Defendants.*

No. 23-cv-00816 (DLF)

### MEMORANDUM OPINION

The plaintiff, Mike Webb, proceeding *pro se*, brings this action against the Office of Management and Budget ("OMB") and the Executive Office of the President ("EOP") under the Freedom of Information Act ("FOIA"), the Freedom of Access to Clinic Entrances ("FACE") Act, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 1983, 1985, and 1986, and the common law of torts. Second Am. Compl., Dkt. 52. Before the Court are the defendants' partial motion to dismiss, Dkt. 72, and the parties' cross-motions for summary judgment, Dkts. 78, 86. For the reasons that follow, the Court will grant the defendants' partial motion to dismiss and motion for summary judgment and deny the plaintiff's motion for summary judgment.

**I.    BACKGROUND**

Under any definition, the plaintiff qualifies as a highly vexatious litigant. In the past few years alone, he has filed nearly 50 cases in this and other federal courts. *See* OMB Mot. to Dismiss, at 1–5, Dkt. 43 (citing the plaintiff's numerous unsuccessful and largely COVID-related cases). The plaintiff routinely alleges "confused and rambling narrative[s] of charges and conclusions" as "an untidy assortment of claims" that cannot be "meaningfully distinguished from bold

conclusions, sharp harangues and personal comments." *Webb v. Dep't of Army*, No. 22-cv-02236, 2022 WL 17851470, at *1 (D.D.C. Oct. 7, 2022) (cleaned up).  Indeed, over the course of this litigation, he has ceaselessly filed frivolous, prolix, "rambling," and "disorganized" motions. Minute Order of February 27, 2024.  As a sample, he has filed nine motions for summary judgment (excluding the one before the Court today), Dkts. 5, 8, 11, 23, 36, 47, 53, 67, 68; three motions for a temporary restraining order, Dkts. 5, 8, 11; two motions for leave to file in forma pauperis after already being denied such status, Dkts. 20, 61; and four motions for sanctions, Dkts. 37, 73, 83, 95.

The plaintiff also has repeatedly and willfully disregarded this Court's orders.  For instance, on March 7, 2024, the Court denied one of his motions for summary judgment as premature and stated that it would not entertain any such motions until the defendants had answered his amended complaint.  *See* Minute Order of March 7, 2024.  Nonetheless, before the defendants answered the complaint, he filed two additional motions for summary judgment, Dkts. 67, 68.  After the Court denied those motions, Minute Order of May 14, 2024, he filed a 35-page "supplemental" memorandum in support of summary judgment, Dkt. 70.  Ultimately, the Court prohibited the plaintiff from making any further filings without prior leave pending a ruling on the instant motions.  *See* Minute Order of September 27, 2024.  The Court also warned him of the possibility of sanctions for his litigating behavior.  *Id*.  Despite the Court's warnings, the plaintiff was undeterred.  Since the Court's September 27, 2024 Minute Order, the Court denied the plaintiff leave to file on six separate occasions.  *See* Dkts. 103, 104, 106, 107, 108; Minute Order of October 9, 2024.  And today, the Court denies leave to file an additional twelve motions, affidavits, and other filings.

This case, like many of the plaintiff's recently filed cases, recycles arguments and allegations related to the COVID-19 pandemic. This particular action stems from a March 23, 2021 FOIA request that the plaintiff submitted to OMB for "[a]ny and all documents pertaining to the infectious dose for COVID-19, or it's [sic] causative agent, SARS-CoV-2 . . . being determined to represent, at least a topic, 'unauthorized disclosure of which reasonably could be expected to cause damage to the national security,' warranting a personnel security classification of 'confidential'" and for "[a]ny and all documents pertaining to the secondary attack rate for COVID-19, or it's [sic] causative agent, SARS-CoV-2 . . . being determined to represent, at least a topic, 'unauthorized disclosure of which reasonably could be expected to cause damage to the national security,' warranting a personnel security classification of 'confidential.'" Ex. 1 to Decl. of Heather V. Walsh, at 4–5, Dkt. 86-4; *see* Pl.'s Aff. ¶ 248, Dkt. 52-1. OMB responded on the same day, acknowledging receipt of the FOIA request. Pl.'s Aff. ¶ 248. The agency commenced its search for records responsive to the plaintiff's request in January 2022, almost one year after it received the request, *see* Walsh Decl. at 3, but was unable to locate any responsive records or identify any custodians who may have responsive records, *see id.* at 12. OMB informed the plaintiff of the same by way of a written final response on January 26, 2024. *See id.* at 2–3.

When OMB failed to respond to the plaintiff's FOIA request within the statutory timeframe, the plaintiff commenced two actions in the Eastern District of Virginia seeking the release of the requested documents and raising various unrelated claims. *See Webb v. Fauci*, No. 3:21-cv-432 (E.D. Va.); *Webb v. OMB*, No. 3:22-cv-418 (E.D. Va.). At some point during the proceedings in the Eastern District of Virginia, his Facebook account was "permanently disable[ed]." Second Am. Compl. ¶ 16. He alleges that OMB, in retaliation for his litigation efforts, conspired with Meta Platforms, Inc., to have his account shut down. *Id.*

3

After the actions in the Eastern District of Virginia were dismissed, the plaintiff filed the instant action. This Court dismissed his first complaint for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. Dkt. 14. The Court also dismissed his amended complaint for failure to comply with Rules 8 and 12 of the Federal Rules of Civil Procedure, among other reasons. Dkt. 46. That dismissal was with prejudice as to defendant Meta, but without prejudice as to OMB. *Id.*

The plaintiff then filed his second amended complaint on February 28, 2024. Dkt. 52. This time, he added EOP as a defendant, as well as the undersigned judge and the District Court for the District of Columbia. *Id.* Because "a party may not engage in judge-shopping by seeking leave to add the assigned judge whenever dissatisfied with the Court's rulings," *Bozgoz v. Haynes*, No. 19-cv-2790 (RDM), 2020 WL 4462980, at *3 (D.D.C. Aug. 4, 2020), the Court dismissed the claims against the undersigned and against the District Court with prejudice. *See* Minute Order of May 14, 2024. The remaining defendants moved to partially dismiss, Dkt. 72, and the parties cross-moved for summary judgment, Dkts. 78, 86.

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When reviewing a motion to dismiss for lack of jurisdiction, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). At the same time, a plaintiff bears the burden of establishing subject-matter jurisdiction, *see Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), and courts must raise obstacles to their jurisdiction sua sponte, *see Fort Bend Cnty. v. Davis*, 587 U.S. 541, 548 (2019). "[W]hile complaints filed by *pro se* litigants are held to less stringent standards than

those applied to formal pleadings drafted by lawyers, even a *pro se* plaintiff bears the burden of establishing that the Court has subject matter jurisdiction." *Newby v. Obama*, 681 F. Supp. 2d 53, 55 (D.D.C. 2010) (cleaned up).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a Rule 12(b)(6) motion, well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (cleaned up). But the Court need not accept "a legal conclusion couched as a factual allegation" nor an inference unsupported by the facts alleged in the pleadings. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a federal agency moves for summary judgment in a FOIA case, "the court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with

FOIA." *Ctr. for Investigative Reporting v. U.S. Dep't of Interior*, 613 F. Supp. 3d 327, 332 (D.D.C. 2020). The agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). Agency affidavits are entitled to a presumption of good faith, *see SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and neither contradictory record evidence nor evidence of bad faith calls it into question, *see Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

### III. ANALYSIS

#### A. Motion to Dismiss

The defendants move to dismiss the complaint under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 72. They argue that sovereign immunity bars the plaintiff's claims under the FACE Act (Count 3), 42 U.S.C. §§ 1983, 1985, and 1986 (Counts 4 and 5), and the common law of torts (Counts 6 and 7). They also argue that he fails to state a claim with respect to his RFRA claim (Count 3) and his standalone claims for declaratory and injunctive relief (Counts 8 and 9). The Court will address the defendants' jurisdictional challenges before addressing the adequacy of the complaint.

1.  *Rule 12(b)(1)*

Sovereign immunity shields the federal government and its agencies from suit and is "jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "To bring a claim against the United States, a plaintiff must identify an unequivocal waiver of sovereign immunity." *See Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014) (citing *FAA v. Cooper*, 566 U.S. 284, 290 (2012)). Such a waiver must be "unmistakably clear in the language of the statute." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 49 (2024) (cleaned up). The Supreme Court has "found a clear waiver of sovereign immunity in only two situations"—"when a statute says in so many words that it is stripping immunity from a sovereign entity" and "when a statute creates a cause of action and explicitly authorizes suit against a government on that claim." *Id.* (cleaned up). "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013).

Count Two of the Second Amended Complaint alleges that OMB violated the FACE Act, 18 U.S.C. § 248, by coordinating with Meta, Inc. to ban the plaintiff's Facebook account and thereby interfere with his First Amendment right of religious freedom. *See* Second Am. Compl. ¶¶ 13–22. The FACE Act permits aggrieved parties to bring a private action against "[w]however . . . by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. §§ 248(a)(2) & (c)(1)(A).

The Court cannot discern, and the plaintiff does not identify, any language in the FACE Act resembling a clear waiver of sovereign immunity. The statute does not state that it is "stripping

7

immunity" from any entity. *Kirtz*, 601 U.S. at 49; *see* 18 U.S.C. § 248. Nor does it "explicitly authorize" suits against any sovereign entity. *See* 18 U.S.C. § 248(e); *Kirtz*, 601 U.S. at 50–51 (finding a waiver of sovereign immunity when a statute authorized suit against "any person" who failed to comply with its directive and defined "person" to include "any . . . governmental . . . agency"). Accordingly, sovereign immunity bars the plaintiff's FACE Act claim.

Likewise, Counts Four and Five, which raise claims under 42 U.S.C. §§ 1983, 1985(3), and 1986, are barred by sovereign immunity. It is well-settled that the federal government cannot be sued under these provisions. *Columbia v. Carter*, 409 U.S. 418, 424–25 (1973) (no waiver of sovereign immunity under § 1983); *Dye v. United States*, 516 F. Supp. 2d 61, 71 (D.D.C. 2007) (same under § 1985(3)).; *Ramirez v. U.S. Park Police*, No. 22-cv-187 (CRC), 2023 WL 1438395, at *2 (D.D.C. Feb. 1, 2023) (same under § 1986). Thus, the plaintiff's 42 U.S.C. §§ 1983, 1985(3), and 1986 claims also will be dismissed.

Count Seven raises a claim for intentional infliction of emotional distress ("IIED"). The Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity with respect to claims for money damages arising out of certain torts. 28 U.S.C. § 1346(b)(1). The FTCA is the exclusive remedy "[w]here a plaintiff seeks monetary damages against a federal agency for torts committed by federal employees." *Lempert v. Rice*, 956 F. Supp. 2d 17, 28 (D.D.C. 2013). But the FTCA does not waive immunity for "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights[.]" 28 U.S.C. § 2680(h). This is commonly known as the "intentional tort exception" to the FTCA. *See, e.g.*, *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1256 (D.C. Cir. 2005).

The D.C. Circuit has held that the intentional tort exception applies only to claims arising out of the torts listed in 28 U.S.C. § 2680(h). *See id.* at 1256 (noting that applicability of the intentional tort exception does not depend on whether conduct underlying the tort was negligent or intentional). And while the D.C. Circuit has not decided whether § 2680(h) applies to IIED claims, other circuits have held that a claim for IIED is not per se barred because it is not among the torts listed in § 2680(h). *See, e.g., Limone v. United States*, 579 F.3d 79, 92 (1st Cir. 2009) (collecting cases). Indeed, courts in this district routinely permit IIED claims to proceed under the FTCA. *See, e.g., Hargrove v. Gooding*, Civ. A. No. 08-743 (RWR), 2010 WL 1946953, at *1 (D.D.C. May 14, 2010); *Lewis v. Werfel*, Civ. A. No. 23-359 (RBW), 2024 WL 111760, at *6 (D.D.C. Jan. 10, 2024). *But see, e.g., Charles v. United States*, Civ. A. No. 21-0864 (CKK), at *6 (D.D.C. Apr. 7, 2022).

Nonetheless, the plaintiff's IIED claim is jurisdictionally barred for different reasons. First, while the FTCA waives the United States' immunity for certain tort claims, 28 U.S.C. § 1346(b)(1), it does not waive sovereign immunity for suits against specific agencies, *see Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 125 (D.D.C. 2016). Because the plaintiff names EOP and OMB, rather than the United States, as the defendants, he cannot establish a waiver of sovereign immunity under the FTCA. *See id.* But even if he had named the United States as the defendant, the Court would still lack jurisdiction because an FTCA suit may not be brought in federal court until the claimant has exhausted his administrative remedies. *See Randhawa v. DHS*, No. 20-cv-3200-DLF, 2022 WL 823067, at *2 (D.D.C. Mar. 19, 2022) (citing *McNeil v. United States*, 508 U.S. 106, 107 (1993)). That includes filing a "written statement sufficiently describing the injury to enable the agency to begin its own investigation, and . . . a sum-certain damages claim" to the relevant agency and having that claim denied by the agency in writing. *Hoffman v. District of*

9

*Columbia*, 643 F. Supp. 2d 132, 138 (D.D.C. 2009) (omission in original); *see* 28 U.S.C. § 2675(a). While the plaintiff alleges that he filed a FOIA request with OMB, Second Am. Compl. ¶ 3, he does not allege that he gave the United States or any agency written notice of his tort claims. Thus, his IIED claim is jurisdictionally barred.

Count Six raises a civil conspiracy claim. As with the plaintiff's IIED claim, a civil conspiracy claim may only be brought against the United States under the FTCA. *See Coulibaly v. Pompeo*, 318 F. Supp. 3d 176, 188 (D.D.C. 2019). The same reasons that require dismissal of the plaintiff's IIED claim—his failure to name the United States as a defendant and his failure to exhaust administrative remedies—also require dismissal of his conspiracy claim. *See id.*

    2.    *Rule 12(b)(6)*

Count Three alleges a RFRA violation. To state a claim under RFRA, a plaintiff bears the initial burden of proving that the government has "substantially burden[ed] [his] exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a); *see Holt v. Hobbs*, 574 U.S. 352, 358, 360 (2015). "A substantial burden exists when government action puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (quoting *Thomas v. Review Bd.*, 450 U.S. 707 (1981)). If the plaintiff proves the existence of a substantial burden, the government must show that its "application of the burden to the person (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000bb-1(b); *cf. Holt*, 574 U.S. at 362.

The plaintiff alleges that the defendants conspired with Meta to "permanently disabl[e] his Facebook account, and block[] his access to a designated safe place of worship." Second Am. Compl. ¶ 16. He appears to allege that Facebook was a designated safe place of worship because

10

of certain comments made by the Governor of Virginia in defense of restrictions on public gatherings during the COVID-19 pandemic.  *Id.* ¶ 21.  Thus, according to the plaintiff, his "religious freedom on social media have [sic] been infringed upon through direct government action, in violation of [RFRA]."  *Id.* ¶ 24.

The plaintiff falls far short of stating a claim under RFRA.  To begin, he does not identify his religion, nor does he identify a religious practice that has allegedly been burdened.  *See Kaemmerling*, 553 F.3d at 678 ("A litigant's claimed beliefs must be sincere and the practice at issue must be of a religious nature." (cleaned up)).  And even if suspension of a Facebook account could constitute a burden on the exercise of religion, he offers nothing to support the cursory assertion that he was suspended at the behest of OMB, and the Court must "disregard . . . unsupported factual allegations within the complaint."  *Gulf Cost Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017); *see also* Order, Dkt. 46 (dismissing the plaintiff's first amended complaint for failure to state a RFRA claim because, among other things, he did not plausibly allege a conspiracy to shut down his Facebook account).  Accordingly, the Court will dismiss Count Three for failure to state a claim.

Counts Eight and Nine of the Second Amended Complaint, respectively, bring claims for declaratory and injunctive relief.  However, "a count for a declaratory judgment is not cognizable as a separate cause of action but is more properly included in the prayer for relief."  *Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 28 (D.D.C. 2014).  The same is true for a stand-alone claim for injunctive relief.  *See Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 9 F.4th 935, 945 (D.C. Cir. 2021).  The Court therefore will dismiss Counts Eight and Nine for failure to state a claim.

11

### B. Motion for Summary Judgment

The cross-motions for summary judgment dispute the adequacy of OMB's search. The plaintiff argues that (1) the defendants characterized his FOIA request as implicating classified records; (2) if records relating to the risk assessment of COVID-19 were classified, then the virus must necessarily have originated in a laboratory; and (3) because the defendants did not produce records indicating that COVID-19 originated in a laboratory, their search must have been inadequate. Pl.'s Mot. for Summary Judgment at 29–31. Webb also argues that OMB failed to clarify his search request, Pl.'s Reply, at 25–26, Dkt. 91, and that the agency failed to use certain search terms like "code words or pseudonyms," *id.* at 26.

The adequacy of a search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). To survive a motion for summary judgment, an agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986) (cleaned up) (emphasis in original); *see also SafeCard*, 926 F.2d at 1200. "The agency has the initial burden to demonstrate the adequacy of its search, which it may meet by providing declarations or affidavits that are 'relatively detailed[,] . . . nonconclusory and submitted in good faith.'" *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 181 (D.D.C. 2013) (cleaned up). A detailed affidavit "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such

records exist) were searched[.]" *Oglesby*, 920 F.2d at 68. "Once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 236 (D.D.C. 2017) (citing *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).

OMB construed the plaintiff's request "as seeking all OMB records pertaining to any determination that either the infectious dose or secondary attack rate of COVID-19 (or its corresponding virus, SARS-CoV-2) warranted classification at the Confidential level." Walsh Decl. ¶ 7. It determined that the only OMB offices likely to have responsive records were the Health Division within the Health Programs Resource Management Office or the National Security Division within the National Security Programs Resource Management Office. *Id.* ¶ 8. It relayed Webb's request to those offices on January 10, 2022. *Id.* ¶ 9. Both offices reported that they did not have responsive records. *Id.* ¶¶ 9–10.

Then, on January 13, 2022, OMB initiated a series of email searches within the OMB unclassified and classified email systems. *Id.* ¶¶ 13–14. These searches were not limited to the Health and Security Divisions, but instead included emails sent to and from all OMB employees. *Id.* ¶¶ 23–24. They also encompassed emails that users deleted or which originated with persons no longer employed at OMB. *Id.* ¶ 17. Using a date range of December 21, 2019, through January 13, 2022, OMB searched for records including the terms "secondary attack rate" or "infectious dose," as well as "confidential," "classified," or "COVID-19." *Id.* ¶ 14. Thereafter, an OMB attorney reviewed each potentially responsive email record and identified neither responsive records nor any other custodian who might have records responsive to the request. *Id.* ¶ 42. On

13

January 26, 2024, OMB responded to the plaintiff's FOIA request, stating that it was unable to locate any responsive records. *Id.* ¶ 5; Ex. 3 to Walsh Decl.

Webb presents no countervailing evidence to show a genuine dispute of material fact with regards to the adequacy of the search. His unsubstantiated assertion that there must be records indicating that COVID-19 originated in a laboratory is the kind of "purely speculative claim[] about the existence and discoverability of other documents" that cannot rebut the presumption of good faith accorded to detailed agency affidavits describing a search. *SafeCard*, 926 F.2d at 1200. Webb argues that OMB could have used unspecified other search terms, such as "code words or pseudonyms," *see* Pl.'s Reply at 26, but an agency retains "discretion in crafting a list of search terms that they believe[] to be reasonably tailored to uncover documents responsive to the FOIA request," *Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) (cleaned up). "Where the agency's search terms are reasonable, the Court will not second guess the agency regarding whether other search terms might have been superior." *Liberation Newspaper v. Dep't of State*, 80 F. Supp. 3d 137, 146–47 (D.D.C. 2015). The bare assertion that "other" search terms could have been used—without specifying those search terms— does not suffice to cast doubt on the reasonability of the agency's search. Finally, OMB's failure to clarify Webb's request does not indicate bad faith on the part of OMB. An agency is not obligated to clarify a request for records—the statutory burden is on the requester to "reasonably describe[] the records sought." *Inst. for Just. v. IRS*, 941 F. 3d 567, 572 (D.C. Cir. 2019) (cleaned up); *see* 5 U.S.C. § 552(a)(3)(A).

OMB is entitled to summary judgment on Count One because the agency "conduct[ed] a search reasonably calculated to uncover all relevant documents," *In re Clinton*, 973 F. 3d 106, 116

(D.C. Cir. 2020) (cleaned up), and the plaintiff has offered no evidence to rebut the adequacy of OMB's search.

## CONCLUSION

For the reasons stated, the Defendants' Partial Motion to Dismiss, Dkt. 72, is granted: Counts 2, 4, 5, 6, and 7 are dismissed for lack of jurisdiction under Rule 12(b)(1); Counts 3, 8, and 9 are dismissed with prejudice under Rule 12(b)(6) for failure to state a claim. In addition, the Defendants' Motion for Summary Judgment, Dkt. 86, is granted; the Plaintiff's Motion for Summary Judgment, Dkt. 78, is denied; and the defendants are entitled to summary judgment on Count 1. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

March 31, 2025